UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Theresa Slama, by her parents and natural guardians, David and Jeanne Slama, and David and Jeanne Slama,

Plaintiffs,

vs.

ORDER

Independent School District No. 2580,

Defendant.

Civ. No. 02-824 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 24th day of March, 2003.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by the provisions of Title 28 U.S.C. §636(c), upon the parties' cross-Motions for Judgment on the Record.

At a Hearing on the Motions, the Plaintiffs appeared by Luther A. Grandquist, Esq., and the Defendant Independent School District No. 2580 ("District") appeared by Nancy E. Blumstein, Esq.

For reasons which follow, we recommend that the Defendant's Motion for Judgment on the Record be granted.

MAR 24 2003

(17)

## II. Factual and Procedural Background

In this action, the Plaintiffs seek judicial review of the Hearing Review Officer's ("HRO's") affirmance of the Hearing Officer's ("HO's") decision, which resolved issues presented by the parties during the Plaintiffs' Due Process Hearing. The Due Process Hearing was conducted under the auspices of the Minnesota Department of Children, Families, and Learning ("MDCFL"), and was commenced on February 20, 2002. See, Findings of Fact, Conclusions, and Decision, MDCFL Case No. 459, at p. 1. ("Findings of Fact, Conclusions, and Decision").

The Plaintiff Theresa Slama ("Theresa") is a seventeen year old student with disabilities which qualify her for special education services, and her parents and natural guardians, David and Jeanne Slama, have challenged the District's decision to replace Theresa's Personal Care Attendant ("PCA"), Diane Nelson ("Nelson"), who had been selected by the Slamas, with a District-employed educational assistant. The Plaintiffs claim that the District's decision to replace Nelson violated the Individuals with Disabilities Act ("IDEA"), Title 20 U.S.C. §1400, et seq. Specifically, the Plaintiffs allege that the District denied Theresa the "free appropriate public education ("FAPE")," to which she is entitled under the IDEA, by failing to provide services in conformity with Theresa's individualized education program ("IEP").

The Plaintiffs contend that Theresa's IEP allowed the Slamas to select the PCA who would care for Theresa while at school. The District argues, in response, that the wordage of the IEP, concerning the selection of the PCA, merely documented the District's informal agreement with the Slamas, and did not constitute a substantive decision, by Theresa's IEP team, concerning her IEP. As a consequence of the District's decision, the Slamas refused to send Theresa to school without Nelson, and she has not attended school since November 30, 2001. See, Findings of Fact, Conclusions, and Decision, at p. 56.

The first issue presented is whether the District denied Theresa FAPE by refusing to allow Nelson to continue as Theresa's PCA while she is at school. Necessarily, that determination hinges on whether the reference to the parent's decision to select the PCA, as contained in Theresa's IEP, constituted a mandate to the District, or was simply a reference to a collateral agreement between the Slamas, and representatives of the District. In addition, we must determine whether the District owed the Plaintiffs notice, consistent with the content standards of Title 20 U.S.C. §1415(b)(3), and 34 C.F.R. §300.503, when the District informed the Plaintiffs that Nelson would no longer be permitted to act as Theresa's PCA at school.

Reduced to its simplest form, this is a case of parental zeal in ensuring the best possible educational experience for their daughter. The parents approached the District, and expressed their interest in having Nelson act as their daughter's PCA. At first, the District vacillated, and then, it acceded to the parents' demand for Nelson, an agreement which was memorialized in Theresa's IEP. Even though it remains uncontested, that Nelson's service as a PCA is not a necessary component to Theresa's ability to receive an educational benefit, the Plaintiffs argue that, because their agreement with the District is mentioned in the IEP, the District is bound by its terms. The Plaintiffs particularly emphasize that the District entered the agreement voluntarily, willingly, and in good faith, and therefore, the District should be held to its agreement even though, concededly, the words of the agreement are not couched in the form of a directive, but merely record the fact that the Plaintiffs had chosen a PCA. With this backdrop, we turn to the parties' arguments.

III. Discussion

A. Judgment on the IDEA Record. A Motion for Judgment on the Record, in the context of the IDEA, is a request that the Court enter a final Judgment in what is essentially "a bench trial on a stipulated record." Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1472 (9th Cir. 1993), cert. denied, 513 U.S. 825 (1994).

Under this form of review, the Court may make a decision on the merits, even if there exist, upon the stipulated Record, disputed issues of material fact. Indep. Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 561 (8th Cir. Cir. 1996); Ojai Unified Sch. Dist. v. Jackson, supra at 1471. As we have previously observed, in Moubry v. Indep. Sch. Dist. No. 696, 9 F. Supp.2d 1086, 1104-05 (D. Minn. 1998)("Moubry II"), a reviewing Court must independently determine, based upon "the preponderance of the evidence," whether a School District has complied with the requirements of the Act. Although this is "a less deferential standard of review than the substantial evidence test common to federal administrative law[,] * * * it still requires the reviewing court to give 'due weight' to agency decision-making." Independent Sch. Dist. No. 283 v. S.D., supra at 561; see also, CJN v. Minneapolis Public School, --- F.3d ---, 2003 WL 1389946 at *2 (8th Cir., March 21, 2003); E.S. v. Indep. Sch. Dist., No. 196, 135 F.3d 566, 569 (8th Cir. 1998); Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997); Yankton Sch. Dist. v. Schramm, 93 F.3d 1369, 1373 (8th Cir. 1996).

In conducting this review, a Court may "afford[] greater weight to the fact findings of the HO [as opposed to the HRO] in view of his opportunity to observe the demeanor of the witnesses and to render believability determinations." Indep. Sch. Dist. No. 283 v. S.D., 948 F. Supp. 860, 871 (D. Minn. 1996), aff'd, 88 F.3d

556, 561 (8th Cir. 1996); see also, Fort Zumwalt Sch. Dist. v. Clynes, supra at 610 ("consideration should be given to the fact that the state hearing panel had the opportunity to observe the demeanor of witnesses"). Nevertheless, where an IEP is being challenged, "[Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 203, (1982)] instructs that we may not substitute our own 'notions of sound judicial policy for those of the school authorities.'" Indep. Sch. Dist. No. 283 v. S.D., supra, 88 F.3d at 561, quoting Petersen v. Hastings Public Schools, 31 F.3d 705, 707 (8th Cir. 1994). "Judicial review of the HRO's decision under the IDEA is limited because judges are not trained educators." Nygren v. Minneapolis Public Schools, 2001 WL 1690048 at *3 (D. Minn., December 14, 2001).

B. The Parties' Cross Motions for Judgment on the Record. The Plaintiffs argue that the District's refusal to continue allowing Nelson to serve as Theresa's PCA denied Theresa the provision of FAPE, as required by the IDEA. The Plaintiffs do not, however, challenge the substance of Theresa's IEP. Rather, the Plaintiffs' argument -- that the District denied Theresa FAPE -- is based upon the District's failure to provide FAPE "in conformity with" -- to quote the IDEA -- Theresa's IEP. The Plaintiffs contend that Theresa's IEP requires that the Plaintiffs appoint Theresa's PCA, while the District maintains that the IEP only referred to an in-

formal agreement, albeit one reduced to writing, between the Plaintiffs, and the District.

1. The Plaintiffs' Claim Concerning the Alleged Denial of FAPE.

a. Standard of Review. "Insofar as a State is required to provide a handicapped child with a 'free appropriate public education,' the Supreme Court has maintained that a State satisfies that requirement 'by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.'" Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 203. In delineating the standard by which to measure the adequacy of benefits provided under the IDEA, the Court settled upon a qualitative standard -- namely, that "some benefit" would have to result from the educational process. Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 200.

In this respect, "[t]he IDEA does not promise perfect solutions to the vexing problems posed by the existence of learning disabilities in children and adolescents." Indep. Sch. Dist. No. 283 v. S.D., supra, 948 F. Supp. at 878-79, quoting Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993). The IDEA does not require schools to "either maximize a student's potential or provide the best possible education at public expense," but only requires a school to "provide sufficient specialized services so that the

student benefits from his education." Fort Zumwalt Sch. Dist. v. Clynes, supra at 612, citing Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 203. "Specific results are not required, 34 C.F.R. §300.350(b), and an IEP need not be designed to maximize a student's potential 'commensurate with the opportunity provided to other children,' see Rowley, 458 U.S. at 189-198." CJN v. Minneapolis Public Schools, supra at *5.

The IDEA requires that a disabled child be provided with access to FAPE. See, Title 20 U.S.C. §1400(c); see also, Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 203; Fort Zumwalt Sch. Dist. v. Clynes, supra at 610. The purpose of the IDEA is to facilitate the provision of "a 'basic floor of opportunity' by opening the door of public education to disabled children, with the hope of integrating them in regular classrooms as much as possible." Yankton Sch. Dist. v. Schramm, supra at 1372, quoting Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 192.

All children with disabilities, including those suffering from a disability of Theresa's nature 'who, by reason thereof, need special education and related services' are covered by the IDEA's protections. Title 20 U.S.C. §1401 (a)(1)(A). These protections include "special education" and "related services," where "special education" is "specially designed instruction * * * to meet the unique needs of a child with a disability," while "related services"

include physical therapy, transportation, and other supportive services, "as may be required to assist a child with a disability to benefit from special education * * *." Title 20 U.S.C. §1401(a)(16) and (17).

FAPE, under the IDEA, is an educational experience which provides a disabled child with special education and related services that are tailored to that child's unique needs, by means of an IEP. See, Title 20 U.S.C. §1401(a)(18). The IEP must include the child's present educational level and goals, specific services to be provided, needed transition services, and criteria for progress evaluation. See, Title 20 U.S.C. §1401(a)(20). "The IDEA is also designed to ensure that parents are afforded a meaningful opportunity to participate in the formulation of the IEP, and receive notice of any proposed changes in their children's educational programs. See, Title 20 U.S.C. §1415 (b)(1)(C).

A parent who disagrees with a proposed IEP, or otherwise believes that her child's education falls short of the Federal standard, is entitled to a State Administrative Hearing. See, Title 20 U.S.C. §1415(b)(2); see also, Fort Zumwalt Sch. Dist. v. Clynes, supra at 610. Under the IDEA, the administrative process is governed by State law. See, Independent Sch. Dist. No. 283 v. S.D., supra, 88 F.3d at 560. "Ultimately, after exhausting all administrative remedies provided by State law, an aggrieved party may file

a civil action in State or Federal Court, to have the administrative determination judicially reviewed." Id., citing Title 20 U.S.C. §1415(e)(2).

b. Theresa's PCA. The Plaintiffs do not argue that Theresa's IEP, as written, has denied her FAPE. Instead, the crux of the Plaintiffs' argument is that the IEP, as applied, denies Theresa FAPE, as the implementation of the IEP has not conformed to the IEP's provision which, they assert, afforded them discretion to select Theresa's PCA. An alternative theory -- upon which Plaintiffs do not forcefully rely, but which requires some discussion -- urges that, even if there was no provision in the IEP allowing the Plaintiffs to select Theresa's PCA, the District denied Theresa FAPE by refusing to allow the Plaintiffs to select that PCA. In other words, as a threshold matter, we must determine whether the failure of the District to expressly invest, by the provisions of Theresa's IEP, authority in the Plaintiffs, alone, to personally select Theresa's PCA, would constitute a denial of FAPE.

School districts have the sole discretion to assign staff. See e.g., Manalansan v. Bd. of Educ. of Baltimore City, 35 IDELR 122 (D. Md. 2001)(stating that, when the provision of an aide is included in a student's IEP, the provision of an aide is mandatory, but that does not afford the student to the assistance of a particular aide); Bd. of Educ. of Scotia-Glenville Central Sch. Dist., 3 IDELR 727

(SEA N.Y. 1995)(rejecting a claim that a disabled student required the services of his mother as an aide, and finding that the services of any appropriately trained individual were sufficient). In conformity with those decisions, we have previously held that school districts have the prerogative to assign staff to provide educational services without parental consent. See, Moubry By and Through Moubry v. Indep. Sch. Dist. 696, Ely, Minn., 951 F. Supp. 867, 885 (D. Minn. 1996)("Moubry I"); Moubry II, supra at 498.

Although the Supreme Court has recognized the importance of parental consultation, and participation in the IEP decision-making process, nothing in the Court's opinions suggest that parents usurp the District's role in selecting its staff to carry out the IEP's provisions. See, Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 208 (holding that "individualized planning conferences are a way to provide parent involvement and protection to assure that appropriate services are provided to a handicapped child,"), quoting S. Rep. No. 94-198, at 12 (1975), reprinted in 1975 U.S.C.C.A.N. 1425, 1436 (1975); see also, Honig v. Doe, 484 U.S. 305, 311 (1988) (recognizing "the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness"); see e.g., Brougham v. Town of Yarmouth, 20 IDELR 12 (SEA Me. 1993)(finding that, under the IDEA, parental preference alone cannot be the basis for compelling a school district to provide a

particular educational plan for a child with disabilities), citing Lachman v. Illinois State Bd. of Educ., 852 F.2d 290, 297 (7th Cir. 1988), cert denied, 488 U.S. 925 (1988); Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1314 (9th Cir. 1987).

Here, it is clear that the District engaged Theresa's parents in the decision-making process. Mrs. Slama was a member of Theresa's IEP team, and it was Mrs. Slama who first approached the District about the possibility of having Nelson attend to Theresa at school. At that time, Nelson was exclusively attending to Theresa outside of school. See, Findings of Fact, Conclusions, and Decision, at p. 7, paras, 31, 33. A meeting of the IEP team was held on September 7, 2001, which the Slamas attended, and voiced, to the remaining members of the IEP team, their desire to have Nelson attend to Theresa at school. Id., p. 8, paras. 40. The IEP team acceded to that request. Id., p. 8, paras. 44. Plainly, the Slamas were consulted, and participated in, the IEP decision-making process.

The fact that the Slamas were not allowed to choose every facet of their daughter's education was not, however, a denial of FAPE. While we understand the Plaintiffs' abundant good faith in seeking the assignment, as a PCA, of one in whom they had great trust, the fact remains that no parent of a public school child -- whether the child is disabled or not -- is entitled to select every

component of the child's education. Nor do we question the capabilities of Nelson, who may be better qualified than some, due to her prior involvement with Theresa, to serve as her PCA. The sole issue presented, however, is whether the denial of Nelson's assignment, as Theresa's PCA, constituted an unlawful denial of FAPE.

The Record before us does not clearly identify the reasons for the District's refusal to allow Nelson to continue as Theresa's in-school PCA, other than some intimation that Nelson was not a District employee. Frankly, the District's reasoning is not material to the determination of whether Theresa was denied FAPE, because FAPE serves as the floor of the services to be presented to Theresa, and not the ceiling. Indeed, the Plaintiffs "never claim that there is nobody other than Diane Nelson who could with proper training meet Theresa's needs as a PCA provider." See, Plaintiff's Memorandum in Support of Motion for Judgment on the Record, at p. 18. In point of fact, under the IDEA, the District is not required to find a PCA with equal or better qualifications as Nelson, for the District's obligation is simply to assign a PCA who is sufficiently capable of assisting Theresa so as to provide her FAPE.

The District's decision to discontinue the services of Nelson -- who the Plaintiffs refer to as "the best PCA Theresa has ever had" -- did not deny Theresa FAPE, as the IDEA "does not require states to provide each handicapped child with the best possible

education at public expense." Petersen v. Hastings Public Schools, 31 F.3d 705, 708 (8th Cir. 1994); see also, Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1026 (8th Cir. 2003)("While the IDEA requires school districts to provide disabled children with a free appropriate public education, it 'does not require that a school either maximize a student's potential or provide the best possible education at public expense.'"), quoting Fort Zumwalt Sch. Dist. v. Clynes, supra at 612. Rather, one of the underlying purposes of the IDEA is to integrate students with disabilities into the public classrooms. See, Title 20 U.S.C. §1400, et seq.; see also, CJN v. Minneapolis Public Schools, supra at *8 ("While it is true that the IDEA expresses a strong preference in favor of disabled children attending regular classes with children who are not disabled, see 20 U.S.C. §1412(5)(1994), the Supreme Court has held that this creates a presumption in favor of public school placement, see, School Comm. of Burlington v. Department of Educ. of Mass., 471 U.S. 359, 373 (1985)."). In view of this purpose, we are troubled by the Plaintiffs' decision to retain Theresa at home, rather than to permit her to attend school, albeit without Nelson, which denies to Theresa the integration with other students, which remains a core goal of the IDEA. In sum, on this Record, we find no showing, let alone a competent one, that Theresa was denied FAPE simply because Nelson was not continued as her PCA.

c. Compliance with Theresa's IEP. The thrust of the Plaintiffs' attack is targeted, not upon the District's refusal to allow Nelson to continue serving as Theresa's PCA at school, but rather, is focused upon the District's noncompliance with Theresa's IEP which, the Plaintiffs contend, expressly provides for the Plaintiffs' selection of Theresa's PCA. Accordingly, the Plaintiffs urge that the District must comply with the IEP, that was expressly formulated for Theresa, if the District is to successfully provide her FAPE.

i. The District Complied with Theresa's IEP. As the Plaintiffs contend, school districts are required to conform to the requirements of a student's IEP. See, Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 188-89; see also, Title 20 U.S.C. 1401(8) (stating that an appropriate educational program is one that is "provided in conformity with" the student's IEP). In Rowley, the Supreme Court explained:

> According to the definitions contained in the Act, a "free appropriate public education" consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child "to benefit" from the instruction. Almost as a checklist for adequacy under the Act, the definition also requires that such information and services be provided at public expense and under public supervision, meet the State's regular education, and comport with the child's IEP. Thus, if personalized instruction is being

> provided with sufficient supportive services to permit the child to benefit from the instruction, and the other items on the definitional checklist are satisfied, the child is receiving a "free appropriate public education" as defined by the Act.

Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 188-89 [emphasis added].

The Court went on to state as follows:

> When the language of the Act and its legislative history are considered together, the requirements imposed by Congress become tolerably clear. Insofar as a State is required to provide a handicapped child with a "free appropriate public education," we hold that it satisfies this requirement by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular education, and must comport with the child's IEP. In addition, the IEP, and therefore the personalized instruction, should be formulated in accordance with the requirements of the Act and, if the child is being educated in the regular classrooms of the public education system, should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.

Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 203-04 [emphasis added].

Theresa's IEP provides, in relevant part, as follows:

> Theresa's parents have chosen to provide Personnel Care Attendant (PCA) services for Theresa in the school setting. The PCA will be responsible for Theresa's personal cares:

> toileting [sic], feeding, care of the electric wheelchair, and transportation throughout the school day. The PCA will provide instructional assistance under the direction of the special education and general education teachers.

Findings of Fact, Conclusions, and Decision, at p. 9, para. 51. Given these considerations, we must not only interpret the "in conformity with" language of the IDEA, but also the relevant language of Theresa's IEP. The former interpretation involves a legal issue, while the latter presents a factual issue, as to which we give due weight, absent some other showing, to the HRO's determination.

In the HRO/HO's Findings of Fact, Conclusions, and Decision, the HO determined that the decision to allow the Plaintiffs to select Theresa's PCA was made "to accommodate the parents' desire, and not because [the District or the IEP team] had concluded that a parent-provided PCA was necessary in order for Theresa to receive FAPE," id. at p. 8, paras. 39, 45,[1] and that "the IEP team did not

---

[1]In this respect, the HO found as follows:

> The district attempted to accommodate a suggestion made by Mrs. Slama in order to try to make her more happy with the services her child was receiving; however, the arrangement did not work out. By accommodating the parents, the district in no way lost its prerogative to determine who would provide service to Theresa." "As the evidence clearly demonstrates, the IEP team did not determine or even discuss whether Ms. Nelson was necessary in order to receive FAPE.

(continued...)

conclude that allowing a PCA selected by Theresa's parents was necessary for her to receive some educational benefit," or "whether it was a necessary part of Theresa's educational program." Id. at p. 8, paras. 42, 44. Thus, the HO found that "[t]he district demonstrated that the IEP team did not decide that a particular PCA was necessary in order for the student to receive FAPE." Id. at p. 13(C). According to the HRO/HO, Theresa's IEP only required the services of an educational assistant -- a PCA -- who would be hired and provided by the District, and not one who would be selected by Theresa's parents. Id. at p. 6, para. 20. Thus, the HRO/HO concluded that the District fully complied with Theresa's IEP, as the IEP only required the provision of a PCA, and not a particular PCA -- that is, not solely Nelson.

The interpretation of Theresa's IEP is a question of fact to which we extend due weight. See, Strawn v. Missouri State Bd. of Educ., 210 F.3d 954, 958 (8th Cir. 2000)("The district court must give 'due weight' because the administrative panel had an opportunity to observe the demeanor of the witnesses and because the court should not substitute its own educational policy for those of the school authorities that they review."). In the opinion of the HRO/HO, Theresa's IEP never contained any provision that expressly

---

[1](...continued)
Findings of Fact, Conclusions, and Decision, at p. 16.

reserved to the Plaintiffs the right to select Theresa's PCA. Rather, the IEP merely documented the District's attempt to accommodate the Plaintiffs' interest in Nelson's selection.

A plain reading of the IEP confirms the HRO/HO's factual finding. In this respect, the IEP merely states that "Theresa's parents have chosen to provide Personnel Care Attendant (PCA) services for Theresa in the school setting." This reference to parental choice suggests a decision made by Theresa's parents -- her "parents have chosen" -- and not a decision of the IEP team, or a mandate of the IEP. The IEP does **not** state that the parents would choose, or that the parents, alone, would select Theresa's PCA. Based on the Record before us, we concur in the determinations of both the HO, and the HRO, and conclude that Theresa's IEP contained no requirement which mandated Nelson's selection by Theresa's parents.

ii. <u>The District Did Not Fail to Implement a Substantial or Significant Provision of the IEP</u>. Even if we had concluded that Theresa's IEP required Theresa's parents to select her PCA, we would, nonetheless, conclude that the District was not required to strictly adhere to that aspect of Theresa's IEP. See, <u>Houston Ind. Sch. Dist. v. Bobby R.</u>, 200 F.3d 341, 349 (5th Cir. 2000), cert. denied, 531 U.S. 817 (2000). As the Court of Appeals for the Fifth Circuit has explained:

> Therefore, we conclude that to prevail on a claim under the IDEA, a party challenging the implementation of an IEP must show more than a de minimis failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP.

Id. at 349.

The issue resolves, therefore, on whether a provision in the IEP, which purportedly authorized Theresa's parents to select her PCA, was a substantial or significant provision of her IEP.

The Plaintiffs argue that a "provision providing that the parents may choose the person to provide PCA services for their child is a substantial or significant provision because the competence and sensitivity of the person providing PCA services is a matter of great importance and concern." Plaintiff's Memorandum in Support of Motion for Judgment on the Record, at p. 12. There is, however, no requirement, within the IDEA, for an IEP to specify the individual who will render any necessary services to the disabled student, as the IDEA only states that "[t]he IEP must include the child's present educational level and goals, specific services to be provided, needed transition services, and criteria for progress evaluation." Title 20 U.S.C. §1401(a)(20).

In effect, the Plaintiff's argument brings us, full circle, to our earlier discussion, as we have already held that the District's rejection of Nelson, as Theresa's PCA at school, did not

deny her of FAPE, as other PCA's were available to render services of similar quality -- a point that the Plaintiffs concede. Accordingly, the provision of Nelson's services was not a substantial or significant component of Theresa's IEP. As we previously detailed, "parental preference alone cannot be the basis for compelling a school district to provide a particular educational plan for a child with disabilities." See e.g., Brougham v. Town of Yarmouth, 20 IDELR 12 (SEA Me. 1993), citing Lachman v. Illinois State Bd. of Educ., 852 F.2d 290, 297 (7th Cir. 1988), cert denied, 488 U.S. 925 (1988); Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1314 (9th Cir. 1987). The IDEA states that an IEP is to be created by an IEP team, and not dictated by the parents of the student. Even if we assumed that Theresa's parents were in a better position to determine who was the best PCA for their child, the IDEA affords them no such right, but rather, the IDEA, to reiterate, only provides for "some educational benefit" -- providing a floor, not a ceiling. Neosho R-V Sch. Dist. v. Clark, supra at 1026 ("[T]he requirements of the IDEA 'are satisfied when a school district provides individualized education and services sufficient to provide disabled children with 'some educational benefit.''"), quoting Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 658 (8th Cir. 1999), quoting, in turn, Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 200.

Certainly, if the provision of a PCA is included in a student's IEP, the provision of a PCA would be mandatory, but that does not require the provision of such services by a PCA of the student's own choosing. See e.g., Manalansan v. Board of Educ. of Baltimore City, supra(stating that when the provision of an aide is included in a student's IEP, the provision of an aide is mandatory, but this did not require the student to services of one particular aide); Board of Educ. of Scotia-Glenville Central Sch. Dist., supra (rejecting claim that a disabled student required the services of his mother as an aide, and finding that the services of any appropriately trained individual were sufficient). We have found no case, and the Plaintiffs have drawn none to our attention, which granted sole discretion to a parent to select a specific individual to provide the generic-like services of a PCA. While not in the context of a PCA, there are decisions which strongly suggest to the contrary. See, Moubry I, supra at 885 n. 12 ("We would anticipate that, in all likelihood, only on rare occasions could a Plaintiff establish that an individual instructor was not only the cause of the disabled student's inability to progress, but also the causative factor in preventing that student from obtaining an appropriate education in the future, so as to warrant a Court's intrusion upon a School District's undeniably strong interest in

selecting instructors who are most suitable to a disabled student's needs").

By way of comparison, in J.S. v. Lenape Regional High Sch. Dist. Bd. of Educ., 102 F. Supp.2d 540, 545 (D.N.J. 2000), the Court found that an "intra-district school transfer did not effect a significant change in [the student's] learning experience." If a transfer of schools is not a significant change then, *a fortiori*, a change from one PCA to another is not a significant alteration of an IEP. Here, the Plaintiffs do not criticize the services that could be provided by another PCA, as they have not allowed their daughter to be exposed to any such services. Rather, the Plaintiffs are insistent that, if they do not get their way, then there is no other alternative to their removal of their daughter from the services, and educational benefits, of the District. If the District had removed Nelson, and refused to provide the services of another PCA, then we would be presented with a far different circumstance, which would prompt a different decision, but that is not the issue we confront. Thus, even if we concluded that the District's refusal to retain Nelson was a breach of Theresa's IEP, we would also conclude that the breach was neither substantial, nor significant.

d. The IDEA's Procedural Requirements. The Plaintiffs further contend that the District failed to provide them with

notice, consistent with Title 20 U.S.C. 1415(b)(3) and (c), and 34 C.F.R. 300.503, of a proposed change in the provision of a FAPE. They concede, however, that they received a letter dated November 14, 2001, from the District's Superintendent, but they argue that nothing in that letter complied with the IDEA's notice requirements, and assert, specifically, that the letter did not contain a statement regarding the procedural protections under the IDEA, nor did it identify the sources where they could obtain assistance on IDEA issues. As a result, the Plaintiffs contend that the Superintendent offered them no recourse with which to challenge the decision disallowing Nelson to assist Theresa in school, and further, that his explanation for that decision was insufficient.

Confronting this same issue, the HRO/HO concluded that, "[s]ince there was no change in the student's educational placement, the notice provisions of 34 C.F.R. 300.503 were not triggered." See Findings of Fact, Conclusions, and Decision, p. 17. We agree.

i. Standard of Review. The Supreme Court has unmistakably recognized that the adequacy of an IEP is to be judged by whether the procedural requirements of the IDEA have been satisfied. In this respect, the Court has stated:

> When the elaborate and highly specific procedural safeguards embodied in §1415 are contrasted with the general and somewhat impre-

> cise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, see, e.g., §§1415(a)-(d), as it did upon the measurement of the resulting IEP against a substantive standard.

Hendrick Hudson Dist. Bd. of Educ. v. Rowley, supra at 205-06.

Congress directs us, therefore, to enforce the IDEA's procedural safeguards "so that parents of a handicapped child will have adequate input in the development of the child's IEP." Independent Sch. Dist. No. 283 v. S.D., supra, 88 F.3d at 562.

Specifically, the IDEA requires that any participating State educational agency shall provide procedural safeguards, including:

> (3) written prior notice to the parents or guardian of the child whenever such agency or unit --
>
> (A) proposes to initiate or change; or
>
> (B) refuses to initiate or change;
>
> the identification, evaluation, or educational placement of the child * * * or the provision of free appropriate public education to the child.

Title 20 U.S.C. §1415(b)(3).

Regulations promulgated under the IDEA also require each public agency to "provide to parents, on request, information about where

an independent educational evaluation may be obtained." 34 C.F.R. §300.503(2).

In construing these provisions, our Court of Appeals has adopted what amounts to a harmless error standard, by which we review claimed procedural deficiencies in the formulation of an IEP, by holding that an "IEP should be set aside only if 'procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits.'" Indep. Sch. Dist. No. 283 v. S.D., supra, 88 F.3d at 562, quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 994 (1st Cir. 1990). As a consequence, a challenge to the validity of an IEP, "based upon a 'laundry listing' which details a 'myriad of technical' deficiencies, may well be insufficient to discredit the appropriateness of the education that was shouldered by that IEP." Indep. Sch. Dist. No. 283 v. S.D., supra, 948 F. Supp. at 882; see also, CJN v. Minneapolis Public School, supra at *6 ("[W]e note that minor 'procedural and procedural deficiencies in the IEPs" cannot support a claim that a FAPE has been denied."), citing Indep. Sch. Dist. No. 283 v. S.D., supra, 88 F.3d at 562.

Moreover, when a change in an IEP is not significant or substantial, the change does not trigger the IDEA's notice provisions. See e.g., J.S. v. Lenape Regional High Sch. Dist. Bd. of Educ.,

supra at 544, quoting DeLeon v. Susquehanna Comm. Sch. Dist., 747 F.2d 149, 153 (3rd Cir. 1984)("Rather than a hearing for every minor violation, however, the DeLeon court provided that '[t]he touchstone in interpreting section 1415 has to be whether the decision is likely to affect in some significant way the child's learning experience'"); Tuscaloosa County Board of Educ., 21 IDELR 826 (SEA AL 1994); Board of Educ. of Scotia-Glenville Central Sch. Dist., 3 IDELR 727.

ii. Legal Analysis. There is no serious question as to whether the Plaintiffs were afforded the opportunity to participate in the creation of Theresa's IEP for, quite properly, they engaged in that process enthusiastically. Nor is there any real dispute that the letter the Plaintiffs received, from the District, provided them with some notice of the change that would occur in Theresa's PCA. Accordingly, the issue is whether that notice was legally sufficient.

The HRO/HO found that the District's decision to substitute another PCA for Nelson did not constitute a substantive change in Theresa's FAPE. See, Findings of Fact, Conclusions, and Decision, supra at 18. The HRO/HO determined that the notice issue, in relation to the alleged denial of FAPE, "was irrelevant to the hearing, because it was a misinterpretation of law," and explained that "[c]ounsel's argument appeared to be that FAPE requires precise and

literal implementation of the wording in an IEP, and that any implementation deviating from the precise wording of an IEP would automatically constitute a change in the student's educational placement." Findings of Fact, Conclusions, and Decision, supra at 18. The HO rejected Plaintiffs' notice argument on three grounds:

> 1. Assuming for a moment that the law does not require the district to implement the precise words of all IEPs, the IEP in this case did not require that the school district allow the parents to select Diane Nelson as the student's personal care attendant;
>
> 2. Counsel for the student cited no case law for the proposition that FAPE requires precise and literal implementation of the wording of an IEP;
>
> 3. Counsel's argument is contrary to case law consistently holding that, absent highly unusual factual circumstances, the specific person providing an educational service under IEP is not a part of the student's educational program.

Id. [internal citations omitted].

Quite obviously, the issue of notice is inextricably intertwined with our earlier determination that Theresa was not denied FAPE by the District's refusal to allow Nelson to serve as her PCA, or by the District's asserted noncompliance with Theresa's IEP. Accordingly, we find that the District did not owe the Plaintiffs the procedural safeguards of the IDEA, including notice, of its decision to assign a different PCA than Nelson to assist Theresa while she was at school, as that change did not constitute a substantial

or significant breach in Theresa's IEP, nor did it produce a denial of FAPE.

NOW, THEREFORE, It is --

ORDERED:

1. That the Defendant's Motion for Judgment on the Record [Docket No. 13] is granted.

2. That the Plaintiff's Motion for Judgment on the Record [Docket No. 8] is denied.

3. That the Clerk of Court is directed to enter Judgment in favor of the Defendant.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.